KC **FILED**

MAR 2 8 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHISN DISTRICT OF ILLINOIS
### EASTERN DIVISON

DANIELLE PICKETT )  TRIAL BY JURY DEMANDED
)
)
Plaintiff, )
)
v. )    07CV1722
)    JUDGE PALLMEYER
SHERIDAN HEALTH CARE CENTER )    MAGISTRATE JUDGE DENLOW
)
)
)

Defendant.

## COMPLAINT

### JURISDICTION AND VENUE

1.      This is a claim for relief under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§2000e- 2 and 3.  Jurisdiction is posited upon Title 28 U.S.C. §1343(4).

2.      Defendant is an employer within the meaning of the Act.  The conduct complained of occurred within this judicial district, at or near Zion, Illinois.

### ADMINISTRATIVE PROCEDURES

3.      Before filing suit, plaintiffs filed a charge of discrimination against the employer with the Illinois Department of Human Rights.  The Equal Employment Opportunity Commission was notified of said charge.  Within ninety days of the date of filing this suit, a right-to-sue letter from the Equal Employment Opportunity Commission was issued; and this suit has been timely filed within 90 days of receipt of said right-to-sue letter.  Ex. B.

- 1 -

## STATEMENT OF CLAIM

4.      On or about June 30, 2006, plaintiff, DANIELLE PICKETT, was

discriminated against in the terms, conditions and privileges of her employment by defendant as

a housekeeper at an hourly wage of $7.65 when she was maliciously discharged because of her

gender, in violation of 42 U.S.C. 2000e-2(a)(1), after reporting sexual harassment by in her

workplace, and the employer failed to take prompt and appropriate effective action to eradicate

the gender based discrimination, as more fully set forth in her attached charge of discrimination,

Ex. A.

## PRAYER FOR RELIEF

5.      Wherefore, plaintiff, DANIELLE PICKETT, asks the court to enter judgment,

upon the verdict of a jury, in her favor, and against the defendant, SHERIDAN HEALTH CARE

CENTER, for all reasonable relief to which she may be entitled under 42 U.S.C. 1981a, §2000e-

5(g) and (k), and 42 U.S.C. 1981a.

ERNEST T. ROSSIELLO
ERNEST T. ROSSIELLO & ASSOCIATES, P.C.
134 North LaSalle Street, Suite 1330
Chicago, Illinois 60602
Telephone:  (312) 346-8920
Telefax:  (312) 346-5988

Attorney for Plaintiff

- 2 -

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy act statement before Completing this form. C71U071014 | [X] FEPA<br>[X] EEOC | 2007CF0357 |

**Illinois Department of Human Rights** _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | | HOME TELEPHONE *(Include Area Code)* |
|---|---|---|
| (Ms.) DANIELLE L. PICKETT | | (847)529-8548 |
| STREET ADDRESS<br>2310 Gabriel St., Apt. 1 | CITY, STATE AND ZIP CODE<br>Zion, IL 60099 | DATE OF BIRTH<br>9/05/78 |

## NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below)*

| NAME<br>SHERIDAN HEALTH CARE CENTER | | NUMBER OF EMPLOYEES, MEMBERS<br>15+ | TELEPHONE *(Include Area Code)*<br>(847)746-8435 |
|---|---|---|---|
| STREET ADDRESS<br>2534 Elim Ave. | CITY, STATE AND ZIP CODE<br>Zion, IL 60099 | | COUNTY<br>Lake |
| NAME | | | TELEPHONE *(Include Area Code)* |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box (es))* | | DATE DISCRIMINATION TOOK PLACE |
|---|---|---|
| [ ] RACE  [ ] COLOR  [x] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN<br><br>[x] RETALIATION  [ ] AGE  [ ] DISABILITY  [x] OTHER<br>(Sexual Harassment) | | EARLIEST (ADEA/EPA)   LATEST (ALL)<br>June 30, 2006<br>[ ] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*

SEE ATTACHED

DEPT. OF HUMAN RIGHTS
INTAKE UNIT

JUL 1 0 2006

RECEIVED

BY_____

*Ernest T. Rossiello & Associates, P.C.*
*134 N. LaSalle St., #2008*
*Chicago, IL 60602-1137*
*(312) 346-8920*

**PLAINTIFF'S EXHIBIT**
*A*

| [X] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (when necessary for State and Local Requirements)<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| **Notary Public Seal**<br>OFFICIAL SEAL<br>ERNEST ROSSIELLO<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES: 03-03-07 | x Danielle Pickett<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)*<br>JUL 7 2006 |

EEOC FORM 5 (5/98)

Pickett v. Sheridan Health Care Center

## STATEMENT OF PARTICULARS

My name is DANIELLE L. PICKETT.   Between about January 2005 until June

30, 2006. I was employed as a Housekeeper at SHERIDAN HEALTH CARE CENTER.

I was compensated at the rate of $7.65 per hour.  I believe I was maliciously discharged

from my position on June 30, 2006 in retaliation for complaining of sexual harassment by

several residents of the center.  I seek reinstatement to my position, with all back pay,

damages and attorneys fees.  I am a 27 year old black woman and a single parent of two

children.  I need my job, and my employer knew it.

The first series of incidents of sexual harassment occurred in or around November

2005.  I was cleaning the room of resident FRANK LOCRICCIO, a 50 year old white

male in a wheelchair.  As I was cleaning his room MR. LOCRICCIO began talking about

his wife who had passed away as he was watching the television show "Soul Train".

Unexpectedly, he said to me, "I would love to go down on a black woman."  I was

completely shocked and humiliated by his comment, and I did not respond.  I walked into

the bathroom so as to distance myself from MR. LOCRICCIO.  MR. LOCRICCIO then

followed me and sat in his wheelchair outside the bathroom door.  He asked me if I was

wearing "panties."  Again, I felt very uncomfortable with his comments and did not

respond.  MR. LOCRICCIO continued making sexually offensive comments to me as he

sat in the bathroom doorway: "Maybe we can hookup some time." "Maybe we can have

sex, satisfy each other's need.  I haven't had sex since Diane (wife) died."  I fervently

finished cleaning his bathroom and left his room as quickly as possible.  I was

humiliated, embarrassed and felt threatened by his sexual comments.  I immediately went

to my supervisor, CRAIG BARNES, Environment Specialist, and relayed to him what

1

had happened. BARNES told me "we're going to talk to him."(meaning Lucriccio).
MR. BARNES told me to have CHARLES RANDOLPH, social worker, accompany me
when I was scheduled to clean MR. LUCRICCIO'S room. MR. RANDOLPH did
accompany me the first time I cleaned his room following the incident; however, that was
the only time. Following that MR. LUCRICCIO continued to make sexual comments to
me. He asked me for sexual favors weekly. He stated to me, "You know I like you. I
can get a place outside of here and we can have some fun." I the reported these incidents
to ROSS ZELLER, Administrator of the center, however nothing was ever done to stop
the sexual comments.

The second series of incidents of sexual harassment occurred in or around
December, 2005 while I was working on the third floor north hall. near the designated
"smoking room". MICHAEL CHARLES, a black man around 40 years old was waiting
with other residents outside the smoking room to be let inside. I was cleaning rooms
along the hallway where he and others were waiting. As I was entering one of the rooms,
he stated to me, " Let me go in there and bang you." I was embarrassed and appalled at
his comment, ignored him and went about my duties. When I came out of the room Mr.
CHARLES was standing by my cleaning cart containing all of my supplies. Mr.
CHARLES then turned to another resident, JOSHUA BERVIN, and said "She was
watching me have sex with PEGGY QUINN (another resident) and she wanted to join in.
She liked it and wants me to do it with her." Once again, I thought the best solution to
make the comments stop was to simply ignore MR. CHARLES. Again, I went about my
duties and continued cleaning rooms. As I was walking down the hall, MR. CHARLES
said "Come here, let me squeeze that" referring to my rear. I responded, "You better not

2

Pickett v. Sheridan Health Care Center

touch me!" At that point MR. CHARLES started walking towards me in an aggressive manner. I continued down the hall; however, he followed. I began to run, and he ran after me. He chased me down the hall, passed the nurses' station. Certified Nursing Assistant, MARY B. (last name unknown), simply stood by and watched as MR. CHARLES chased me down the hallway. Finally I made my way into the dining room where SAMMY LEE, housekeeper, stopped MR. CHARLES. RANESSHA (last name unknown), a Certified Nursing Assistant who was pregnant at the time, stated "Michael Charles you better leave her alone!" MICHAEL CHARLES said, "shut up before I bang bang bang you and make you have that baby." The situation subsided as other nurses began to warn MR. CHARLES that he would not be allowed to have a cigarette if he kept speaking in such a sexually offensive manner.

Meanwhile, ROSE LEVEY, a resident who was in a wheelchair, asked me to help her open a soda. As I bent down to help her, MICHAEL CHARLES approached me from behind and stuck his hands in between my legs, grabbing my vagina. I stumbled forward and caught myself on MS. LEVEY's wheelchair. MR. CHARLES looked at me, laughed, and walked away.

I was extremely upset and humiliated. I felt violated. I immediately found my supervisor, MR. BARNES, and told him what had just occurred. BARNES assured me that they would talk to MR. CHARLES about his behavior. BARNES then stated, "what is it about you? They like you. Whatcha doing?" I replied, "I'm not doing anything. I'm doing what you are paying me to do." I am unaware as to whether anyone spoke to MR. CHARLES or not, as no one from the employer's management team ever reported back to me what prompt and appropriate corrective action, if any, they had taken.

3

Pickett v. Sheridan Health Care Center

A third series of incidents occurred on or about Saturday, June 24, 2006 at approximately 2:15 P.M. while I was cleaning resident RONALD SWANSON's room. As I walked by, SWANSON stuck his finger out and aimed it at my breast. I swatted his hand away and continued past him. I was forced to walk past him again as I left the bathroom, as his room has confined space. SWANSON had a yellow smiley face sticker on his finger and rubbed it on my breast. Again, I slapped his hand away. He then grabbed me by the waste and began squeezing my buttock. Certified Nursing Assistant ANGELA JAMBRICK was exiting the room across the hallway and witnessed SWANSON grabbing at me. She yelled, "Hey, let her go! What are you doing?!" at which point SWANSON released me and I quickly exited the room.

I immediately found my supervisor, MR. BARNES, and told him what had just occurred. BARNES himself did nothing, but instructed me to tell DEANNA DODSON, Care Plan Coordinator, what had happened. I felt this was "passing the buck". DODSON informed me that she would speak with SWANSON about his behavior and that she would "take care of it."

The next day, on or about June 25, 2006 BARNES informed me that the police were present and wanted to speak to me. Certified Nursing Assistant JULIE STANGEL apparently had called them. OFFICER TOTTEN of the ZION Police Department asked me what had happened with MR. SWANSON the previous day. I explained what had occurred and told him this was the third individual who had sexually harassed me at work. NANJEAN PAINTER, co-owner, was called and she, MARIE MCCORMICK, nurse, CRAIG BARNES, my supervisor, OFFICER TOTTEN and myself went into the conference room. I wrote a statement of what had occurred. OFFICER TOTTEN, not

4

Pickett v. Sheridan Health Care Center

knowing quite how to handle the situation, called his supervisor. The officers asked me
if I would like to press charges against SWANSON. MS. PAINTER said that they would
be removing SWANSON from the facility and, in the meantime, he would be closely
monitored and not allowed off of his floor; therefore, I did not think I needed to press
charges.

After the meeting adjourned, PAINTER asked me to punch out for the day. "Tell
Craig I am sending you home. Punch out and go home." She informed me we would
discuss the matter further at a meeting to be held on Tuesday, June 27, 2006.

On or about June 27, 2006 at about 2:00 PM, I was called to MS. PAINTER'S
office. Present were: PAINTER, ROSS ZELLER, Administrator, CRAIG BARNES, my
supervisor and by my request, DIANE LEE, union steward. MR. ZELLER asked me to
relay directly to him what had occurred between myself and MR. SWANSON because he
had been "getting a couple of different stories." After I relayed the details of MR.
SWANSON'S sexual harassment, ZELLER stated that since I did not leave the room
after he attempted to poke my breast the first time, I was "in effect" giving him
permission to touch me again. I was outraged at ZELLER'S response. He made it seem
as though SWANSON's sexual harassment was in some way my fault, or that I found it
welcome. ZELLER shocked me even more when he informed me that he did not
consider FRANK LOCRICCIO'S comments to be "sexual harassment" because,
technically, LOCRICCIO did not touch me, or "violate (me) in anyway" and, therefore,
he would not do anything about it. During the meeting, PAINTER commented, "well,
you are a pretty girl", implying it was therefore acceptable or understandable for these
men to sexually harass me. ZELLER told me simply to avoid SWANSON, if I see him

5

Pickett v. Sheridan Health Care Center

in the hall, or to walk the other way. If I am cleaning his room and he enters, I should leave. I was confused, as I was under the impression that SWANSON had been removed from the facility, as PAINTER had told the Zion police officer the day before that he was being "permanently removed." Later that day, I expressed my concerns over SWANSON remaining in the facility with DIANE LEE, union steward.

The next day, on or about Wednesday, June 28, 2006, ZELLER called me into his office and explained that DIANE LEE had informed him of my concerns over SWANSON remaining as a resident in the facility. He asked me whether I felt "comfortable in the building." I responded that I did not feel safe, and felt as though I was lied to regarding how the perpetrators would be dealt with. ZELLER then stated, "If you can't handle what is going on, maybe you should find another job." I was so humiliated by this. I commented that I felt as though they were treating the facility as if it were a clothing store, where the customer (in this case the resident) is always right. ZELLER replied, "well, maybe you should go work in a store. go clean stores. Because if you can't handle it, maybe you should find another job." I was so frustrated and humiliated that I began to cry. I could not believe that ZELLER was dismissing my concerns and allegations about a hostile free work environment. I was so upset I had to leave for the day. I felt as though ZELLER was trying to force me to quit. I have two small children, of whom I am the sole provider; therefore, quitting was not an option.

On or about June 29, 2006 at approximately 1:00 P.M. I called ZELLER and inquired about my position, as I was not sure if I had been terminated or not. I made it clear that I cannot afford to lose my job and I would like to return to work. ZELLER said he would discuss the situation with PAINTER and BARNES and call me back. I did not

Pickett v. Sheridan Health Care Center

hear from him until the next day. On June 30, 2006 at approximately 9:50 A.M.

ZELLER called me and stated, "I don't feel comfortable with you employed here since

you aren't comfortable with what is going on. Maybe it is best if you seek other

employment." Again, I stated to him that I needed to continue working at Sheridan

Health Care Center because I needed the job, but I would like the administration to deal

with the sexual harassment that occurred. ZELLER then said. "I think it's best if we part

ways." At that point, I knew I had been fired for my complaints about the hostile work

environment.

As a result of being wrongfully terminated from my position with the Sheridan

Health Care Center in retaliation for bringing forward sexual harassment allegations

against residents of the Center, I have been embarrassed and humiliated and

economically harmed. I would like to be reinstated to my former position, as soon as

possible, with back pay, damages and legal expenses.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the within and foregoing

document was served by first class mail, on July 10, 2006, before 5:00 p.m., with postage

fully prepaid from the U.S. Postal depository at 134 North LaSalle Street, Suite 2008,

Chicago, Illinois, 60606, to the attorney for defendant at their address of record.

ERNEST T. ROSSIELLO

7

EEOC Form 161-B (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Ms. Danielle L. Pickett<br>2310 Gabriel Street, Apt. 1<br>Zion, Illinois 60099 | From: | Equal Employment Opportunity<br>Commission<br>Chicago District Office<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois 60661-2511 |
|---|---|---|---|

**Certified Mail No. 7003 3110 0004 0947 6164
(CP Attorney)**

[ ] *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2006-02438** | **Nola Smith, State/Local Coordinator** | **(312) 886-5973** |

*(See also the additional information enclosed with this form.)*

## NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe* _____    _2/26/07_
**John P. Rowe, District Director**    *(Date Mailed)*

Enclosure(s)

cc:   **Sheridan Health Care Center**

PLAINTIFF'S
EXHIBIT
*B*

RECEIVED
FEB 27 2007
ERNEST T. ROSSIELL
& ASSOCIATES, P.C.